ROBERT M. MURPHY, Judge.
19Jefferson Parish Firefighters Association of Louisiana Local 1374, and its President, Robert Burkett, et al. (collectively, “Firefighters”),[1] appeal the trial court’s September 21, 2012 judgment granting defendants, the Parish of Jefferson and the Jefferson Parish East Bank Consolidated Fire Department’s (collectively, the “Parish”) cross-motion for summary judgment dismissing with prejudice all of the Firefighters’ claims for declaratory judgment and supplemental injunctive relief. The Firefighters sought to compel recalculation of their pay and reimbursement of a 2006 pay increase provided by the Parish “Red Book Ordinance” and withheld by the Parish. For the reasons that follow, we affirm in part, reverse in part, and remand.
| ¡¡FACTS AND PROCEDURAL HISTORY
This is a pay dispute between the Firefighters and the Parish: State law mandating a 2% “longevity pay” for firefighters after three years of continuous service up to and including 20 years pursuant to La. R.S. 33:1992(B);[2] La. R.S. 33:2002(A)(1) providing that the Firefighters receive “supplemental pay” from the State;[3] and the Parish providing raises at the same time set forth in Jefferson Parish’s Red Book Ordinance, a 5% increase for years one to 15 and a 21k% increase to the 25th year. Jefferson Parish Ordinance 18226 *248 (Mar. 13,1991).[4]
Computation of the Firefighters’ increases and wages is addressed by State statute. La. R.S. 33:2004(D) provides that additional compensation paid by the State shall be included in the calculation of total wages.[5] La. R.S. 33:1992(B) |4provides that the base pay and accrued longevity shall be used in computing Statemandated 2% longevity pay.
On April 6, 2006, the Firefighters, through the unincorporated association, Jefferson Parish Firefighters Association of Louisiana Local 1374, and its chief executive officer, Robert Burkett,[6] filed a petition for declaratory judgment and supplemental injunctive relief seeking back pay, alleging that the Parish’s exclusion of State Supplemental Pay from the calculable base for determining their annual pay raises was in error. The Firefighters sued for retroactive and prospective pay adjustments based on State mandates. The Firefighters sought a declaration that Rule V, Section 8 of the pre-2009 Red Book Ordinance, which excluded State supplemental pay from the calculable base for determining raises, was unenforceable as it conflicted with State law requiring its inclusion. See La. R.S. 33:2004(D). They further sought a mandatory injunction and supplemental relief via a declaratory judgment with respect to the recalculation of pay. The Firefighters also asserted a separate claim against the Parish for withholding their post-Katrina 2006 pay raise as set forth in the Parish’s Red Book. *249 They also seek the difference, 3% or .5%, between the 2% raise paid in 2006 and the scheduled Red Book increases.
On May 14, 2012, the Firefighters and the Parish agreed to submit the issue of liability to the trial court on the basis of cross-motions for summary judgment, | ¿reserving damages, if any, for a subsequent proceeding.[7] The motions were heard on August 27, 2012.
The motions were taken under advisement. On September 21, 2012, the trial court denied the Firefighters’ motion for summary judgment and granted the Parish’s cross-motion for summary judgment, dismissing all of the Firefighters’ claims with prejudice.
In its assigned reasons for judgment, the trial court cited La. R.S. 33:2004(D) and held that the State additional compensation must be included in the calculable base for determining the Firefighters’ pay increases. For the years that the Firefighters received an increase in which State supplemental pay was not specified as part of their raises, for which the Firefighters seek retroactive payment, the trial court found that the Parish was entitled to a set-off for its more generous Red Book increases provided to the Firefighters. The trial court further denied retroactive payment on finding that considering the ample “set-off,” the Firefighters had failed to prove up any damages, an essential element of their claim. As for fiscal year 2006, for which the Firefighters’ raise consisted only of the State-mandated longevity increases, but not the scheduled Red Book raises, the trial court found the Red Book raises discretionary. It found that any additional increase above the State-mandated 2% was dependent on the availability of funds and that the 2006 freeze was supported by sufficient evidence of the uncertainty of post-Katrina/Rita property tax collections in Jefferson Parish.
The trial court ruled that in Title 33, the Legislature intended with its police power, that firefighters in certain municipalities, receive as compensation State-mandated longevity increases above their prior year’s wages combined with State supplemental pay. It found this minimum was met with the Parish’s payment of Rthe Red Book schedule. The trial court further found that the Parish presented sufficient evidence of the uncertainty of funding due to Katrina, per former Parish CFO Nancy Cassagne’s testimony, to warrant its exercise of discretion in awarding only the minimum 2% State-mandated longevity increase in 2006.
On September 28, 2012, the Firefighters devolutively appealed the September 21, 2012 summary dismissal of their claims. ISSUES
The Firefighters contend that the Parish failed to calculate and pay pre-2009 Red Book-guaranteed annual longevity pay raises of either 5%, for the first 15 years of service, or 2.5%, for years 15 to 25, on a “total wage” basis, that is considering local Parish pay in addition to State supplemental pay. The Firefighters contend that Statemandated accrued longevity pay, at La. R.S. 33:1992(B) and La. R.S. 33:2004(D), obligates the Parish to include the amount of State supplemental pay in the base pay or “total wages” for all pay and benefit calculations.
As for the 2006 skipped raise, the Firefighters contend that the Parish failed to implement full pay raises in fiscal year 2006 (either 5.0% or 2.5%), despite an ex *250 press Red Book provision calling for such raises. The Firefighters challenge the Parish’s decision to award only a 2% longevity raise in 2006 equal to the Statemandated raise of La. R.S. 33:1992(B). The Firefighters argue that the Red Book sets the Firefighters apart from other Parish employees by specifically requiring yearly Firefighter pay raises. They further argue that since there was no repeal or amendment of the Red Book ordinance, via the procedure set forth in Rule III, Section 2 of the Ordinance, the Red Book raises were due in 2006.
The Parish responds that the Firefighters’ claims were properly dismissed by the trial court because the Parish substantively complied with State law in prior 17years when it paid out longevity raises under the Red Book Ordinance that exceeded the minimum State-mandated longevity raises, other than in 2006.
The Firefighters concede that each year (except 2006) they received more in compensation under the Red Book provisions than they would have otherwise received if the Parish had merely complied with State law. The Firefighters contend, however, that State supplemental pay must be included in the Red Book wage calculation.
STANDARD OF REVIEW
Appellate courts review the granting of a summary judgment de novo under the same criteria governing the trial court’s consideration of whether summary judgment is appropriate. Dean v. Ramos Corp., 00-1621 (La.App. 5 Cir. 2/28/01), 781 So.2d 796. Questions of law, such as the proper interpretation of a statute, are reviewed under the de novo standard of review. Red Stick Studio Dev’t, L.L.C. v. State of Louisiana, et al., 10-193, p. 9 (La.2011), 56 So.3d 181, 187; See also Olde Nawlins Cookery, L.L.C. v. Edwards, 09-1189 (La.App. 1 Cir. 5/3/10), 38 So.3d 1012 (proper interpretation of an ordinance is reviewed under de novo standard).
Appellate courts review a district court’s decision to grant or deny a declaratory judgment using the abuse of discretion standard. City of Kenner v. Kyle, 02-1262 (La.App. 5 Cir. 4/8/03), 846 So.2d 34. The trial court’s grant or denial of injunctive relief should not be disturbed absent manifest abuse of discretion. Charter School of Pine drove, Inc. v. St. Helena Par. Sch. Brd., 07-2238 (La.App. 1 Cir. 2/19/09), 9 So.3d 209.
ASSIGNMENTS OF ERROR
In their first assignment of error, the Firefighters contend that the trial court erred in the computation of Red Book Ordinance longevity increases when applying State-mandated longevity raises under La. R.S. 33:1992(B) by failing to |sinclude State supplemental pay in the calculation of total wages under La. R.S. 33:2004(D).
In their second assignment of error, the Firefighters contend that the trial court erred in concluding that the Parish was justified in withholding the full measure of scheduled Red Book pay increases for fiscal year 2006.
LAW AND DISCUSSION
The parties assert claims and defenses under both State and local law.
Methodology. Despite La. R.S. 33:2004’s requirement to include State compensation in the calculable base for “any other employee benefit,” State supplemental pay was expressly excluded by the pre-2009 Parish ordinance. Rule 1, Section 2; Rule V, Section 8, the Red Book. The Parish contends nonetheless, that each year it complied with La. R.S. 33:2004(D) when it paid in excess of the required minimum raise under La. R.S. 33:1992(B).
In 2009, after this suit was filed, the Red Book was amended, to read consistent with State law and require inclusion of State *251 supplemental pay in the calculable base for determining longevity increases. Ordinance No. 23486 (2/18/09).
The Parish contends that as long as its payment of the base salary (without first adding the State supplemental pay) multiplied by the scheduled Red Book percentage, 5% or 2.5%, equals or exceeds the required minimum raise of La. R.S. 33:1992(B), the Firefighters have no claim. In other words, the Parish contends it has met its obligation as long as the amount actually paid meets the minimum payment required under State law.
The Firefighters, however, offer a different calculation that would require the addition of State supplemental pay prior to the computation of the Red Book schedule of raises. They contend that the base salary must first be added to State 1 [[Supplemental pay before being multiplied by the scheduled Red Book percentage to derive the correct minimal increase.
Pursuant to La. R.S. 33:2004(D),[8] we agree with the trial court “that [the Parish] cannot abrogate from State law by excluding State supplemental pay from the calculation of annual raises.” We further agree with the Trial Court’s methodology in using the prior year’s salary, including all State supplemental compensation, and the 2% multiplier to calculate the required minimum increase. Contrary to the Firefighters’ contentions, we find no legal basis to require Red Book percentages to be used to calculate the required minimum rather than the statutorily-dictated 2%.
Persuasive jurisprudence from the Fourth and Second Circuits supports the trial court’s methodology. The trial court here correctly relied on rulings in New Orleans Firefighters Local 632, et al. v. City of New Orleans, et al., 03-1281 (La. App. 4 Cir. 5/26/04), 876 So.2d 211, units denied, 04-1590, 04-1601 (La.11/15/04), 887 So.2d 475, and Turner v. City of Shreveport, 437 So.2d 961 (La.App. 2 Cir.1983), unit denied, 442 So.2d 468 (La.1983), for its conclusion that the municipality should receive a credit for all increases against the State-mandated longevity increase. As long as the amount of the raise at least equals the required 2% Statemandated increase, including all State compensation, it does not matter how that increase was described or granted.
The holdings of the Fourth and Second Circuits set forth the required methodology to ascertain the required minimum. The circuit courts reviewed both the legislative history and legislative intent. Turner, 437 So.2d at 963-64; New Orleans Firefighters, 876 So.2d at 224. They found that the Legislature intended to provide fire protection for certain municipalities by assuring minimal salaries | inand benefits to the Firefighters by providing a minimum longevity increase under La. R.S. 33:1992(B).
Red Book. On November 16, 2005, after Hurricanes Katrina and Rita, the Parish Council adopted Ordinance 22633, freezing pay increases for all departments, except for the State-mandated 2% for the Fire Department. The Parish relied on this Ordinance to withhold Red Book pay increases for fiscal year 2006. The Firefighters contend the amendatory procedure of the Red Book was not complied with to modify or repeal the Red Book pay raise structure. The Parish responded that the Firefighters did receive the State statutorily mandated minimum increase in 2006, and that a freeze above that was warranted. The Parish Ordinance focused on the effects and uncertainty of Parish budgeting post-Katrina as reasons for the one-year freeze.
Ordinance No. 22633, pertaining to the 2006 Parish budget, provided in part:
*252 WHEREAS, due to the catastrophic effects of Hurricanes Katrina and Rita, the Parish of Jefferson was unable to hold budget hearings for the 2006 fiscal year;
SECTION 3. That although the proposed budget contains an average raise of 2.5%, the administration will not authorize any raises for the period beginning January 1, 2006 until a new 2006 budget is adopted by the Council. Annual raises will be subject to fund-wide or district-wide budgetary restrictions and contingent upon the availability of funds. (Emphasis added).
Ms. Cassagne, the former Parish CFO, testified that the Fire Department’s funding is dependent solely on the property tax millage; that the property tax billing was delayed after Katrina; that preparation of the 2006 budget was postponed; that the Finance Department did not have accurate projections of the millage revenue that would be generated; and that the Parish was justifiably concerned that 2006 collections would be insufficient.
_j_yAsked for “reasons for the elimination of projected pay raises,” Ms. Cassagne testified:
But in the immediate aftermath of Hurricane Katrina, the Parish had no idea who was going to return to the Parish, whether property taxes — in this case property taxes being the sole tax that generates the revenues for this district, whether people were going to come back and actually pay their property taxes. So, in fact, the Parish was so concerned about the chaos that existed after Katrina that they didn’t even do a budget until several months after the beginning of the year. The Parish adopted the 2005 budget because of the state of chaos, the state of lack of information, lack of knowing what was going to happen in the Parish. In fact, when the budget was actually adopted on February 22nd, I believe it was, of 2006, there was still huge amount of uncertainty that existed in Jefferson Parish.
Q. So in the interim you were working with the '05 budget?
MS. CASSAGNE:
Back up. Based on state law, the Parish has to adopt a budget by the end of the calendar year and so the Parish actually tried to comply with the law and adopt a budget by the end of the year. Again, we came back in October after Katrina to some semblance of running government with very little information as to what was happening in the state or the Parish from a fiscal standpoint. No idea what was going to happen from property taxes, sales taxes, which is not pertinent to this, or whether the Parish was actually going to recover from this, you know, huge catastrophic storm.
FINDINGS
On May 14, 2012, the parties stipulated to bifurcate the trial into liability and later address damages, if appropriate. Any decision beyond methodology is premature in the current posture of the case. Liability was taken up on August 27, 2012 on cross-motions for summary judgment. At that point, the trial court had no evidence on damages to confirm that the Parish’s payments exceeded the statutorily required minimum increases in every case, particularly in 2006. The Firefighters’ concession that Red Book payments exceeded the State-mandated minimum does not answer the “damages” question of whether the correct methodology was adhered to.
112We find that the Parish must meet its State-mandated longevity pay responsibilities under La. R.S. 33:1992(B) and La. R.S. 33:2004(D). Without evidence on damages, beyond the scope of the instant *253 appeal, we are unable to conclude, as the trial court did, that the Firefighters had no damages to justify dismissal of the Firefighters’ claims in their entirety.
We find that the trial court was correct in finding that the Red Book raises above the State-mandated 2% were discretionary. Rule V, Section 2.1. We further find that the Red Book, Section 3 of Ordinance 22633, makes any additional raises “contingent on the availability of funds,” and that there was sufficient evidence of uncertainty in the availability of funding to warrant the 2006 freeze. Additionally, we find the amendatory procedure of Rule III inapplicable to these facts since the Pay Plan in Rule V was already subject to an assessment of funding availability without having to amend the Red Book statute. Additionally, a public hearing was required only before legislative changes to the Red Book ordinance and not before findings of unavailable funding. Rule III, Section 2.1.
We further find that the trial court was correct in declaring that State supplemental pay must be used in the calculable base, viz., that Rule V, Section 8 of the pre-2009 Red Book is unenforceable under La. R.S. 33:2004(D). As no evidence of damages was presented to the trial court, any claim for injunctive relief was premature. The trial court therefore did not abuse its discretion is not granting injunc-tive relief.
On de novo review of the defendants’ cross-motion for summary judgment, and considering controlling State law, we find that the trial court correctly ruled that all State compensation must be included in the calculable base to determine the State-mandated increase of 2%. We therefore affirm the granting of the Parish’s summary judgment on liability insofar as the method,ology of determining | isthe amount of the State-mandated minimum increase and the obligation of the Parish to give raises in a sum equal to or greater than the State-required minimum longevity raise. However, we reverse the Parish’s summary judgment insofar as it dismissed all of the plaintiffs’ claims, specifically any finding as to damages. The trial court had no evidence to consider on individual damages in this bifurcated matter. Arguably, there must be a hearing on the calculation of Parish raises to show that in no instance, particularly in 2006, were the raises less than the State-mandated minimum required increases. We therefore remand for a determination as to what, if any, damages are applicable to the individual claims.
DECREE
For the foregoing reasons, the ruling of the trial court is affirmed in part as to the correct methodology to use in calculating annual increases, reversed in part as to the dismissal of the Firefighters’ individual damage claims, and remanded for an evi-dentiary hearing on individual damages.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

. Rule II, Section 1 of the Red Book Ordinance recognizes Local 1374 as the grievance adjuster for the Firefighters. The "Red Book Ordinance" refers to a Jefferson Parish ordinance pertaining to Firefighter benefits and salary. Jefferson Par. Ordinance 18226 (1980).

. La. R.S. 33:1992(B) provides:
From and after the first day of August, 1962, each member of the fire department who has had three years continuous service shall receive an increase in salary of two percent and shall thereafter receive an increase in salary of two percent for each year of additional service up to and including twenty years. Both the base pay and accrued longevity shall be used in computing such longevity pay. (Emphasis added).

.La. R.S. 33:2002 provides in part:
(A)(1) In addition to the compensation now paid by any municipality, parish, fire protection district, or other political subdivision maintaining a fire department ... to every paid, regularly employed employee ... shall be paid extra compensation by the state in the amount of five hundred dollars per month for each such paid employee who has completed or who hereafter completes one year of service.

.Red Book Rule V Pay Plan
Section 2. Salary Increases
2.1 An employee entering into the classified service at the prescribed minimum starting rate, authorized for a particular position, may be granted an annual merit increase on the first pay period in January, subject to the availability of funds. Thereafter, an employee will become eligible for all subsequent pay increases on the first pay period in January.
Employees hired after January 1, 1990 will be entitled to the same salary increases. However, the eligibility of all pay increases of said employee, hired after January 1, 1990, will be their anniversary date of employment.
An employee will become eligible for annual increases as per the following schedule.
1. A five (5) percent increase (equal to one (1) step) of the Base Salary at the successful/satisfactory completion of the first through the tenth year; and
2. A five (5) percent longevity increase of their Base Salary for the successful/sat-isfactoiy completion of the eleventh through the fifteenth year of service. The five (5) percent calculation will be used thereafter on the first pay period of the current year or their anniversary date of employment, whichever applies, through the fifteenth (15) step.
3.Those employees who surpass the fifteen (15) steps plus the raise stated in RULE V, Section 2.1, paragraph 3, who would not receive a one (1) step increase shall receive a two and one/half (2 ¡4) percent or a half-step longevity increase in accordance with the pay plan, through the twenty-fifth step.

. La. R.S. 33:2004(D) provides:
The additional compensation paid by the state to municipal or parish fire department employees as provided by this Subpart shall be included in the calculation and computation of the total wages paid to the employee in the determination of employer contributions to any retirement system or pension fund of which such employee may be a member as well as in the determination of retirement eligibility and benefits which may accrue to the employee under any retirement system or pension fund, as well as in the determination of any other employee benefits, sick leave, or disability pay to which the employee might be entitled. (Emphasis added).

. On May 26, 2009, the trial court granted the Parish’s exceptions and ordered the Firefighters to amend their petition to separately name each individual plaintiff. On June 10, 2009 and August 16, 2011, the Firefighters filed their First and Second Amended Petitions, respectively, naming individual plaintiffs.

. The trial court’s May 14, 2012 consent order provided: "IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the issue of liability shall be tried separately from the issue of damages[.]”

. See note 5, supra.